# W. P. TARRANT v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Appellant.

### Division One, November 29, 1911.

1. **INSTRUCTIONS: No Evidence to Support: New Trial: Ejecting Passenger.** In this action for damages for wrongful ejectment from the defendant's train, the plaintiff's evidence tended to show that, soon after he boarded the train, his ticket to St. Louis was taken up and nothing given him in return; and that long before reaching St. Louis he was ejected from the train because he refused to produce another ticket or again pay fare. Defendant's servants testified, that the plaintiff gave them a ticket to Benton, Arkansas, a station much nearer the point of departure than St. Louis, and the auditor "checked his hat" to that station; that the auditor took up that check before they reached Benton; and that, when they found plaintiff still on the train after passing Benton, and found that he was unable or refused either to pay fare or produce a ticket, they ejected him. The jury found for defendant. It is *held*, that, under this evidence the trial court rightly granted plaintiff a new trial on account of the giving of an instruction which told the jury that if the auditor gave plaintiff a "check," and when thereafter he demanded this check plaintiff failed to exhibit it, then the auditor had the right to eject plaintiff if he refused to pay his fare. That plaintiff had a "check" at that time is positively disproved by the testimony of both sides.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

AFFIRMED.

*Robert T. Railey* and *James F. Green* for appellant.

There was no error in the instructions given on part of defendant. 2 Hutchinson on Carriers (3 Ed.), sec. 1036; Hibbard v. Railroad, 15 N. Y. 455; Stephen v. Smith, 29 Vt. 160; Nutter v. Railroad, 78 S. W. 470; White v. Railroad, 107 Mich. 681.

*C. B. Williams* and *Francis M. Curlee* for respondent.

BOND, C.—This action was brought by plaintiff in the circuit court of the city of St. Louis to recover damages for his ejection from one of the trains of defendant, on the 30th of September, 1907, at McAlmont, a station a few miles north of Little Rock, Arkansas. Plaintiff alleged in his petition that he had purchased a ticket from the Kansas City Southern Railroad from Lake Charles, Louisiana, to St. Louis, Missouri, for which he paid $23, and which entitled him to passage over that road to Texarkana, Arkansas, and thence over defendant's road to St. Louis, Missouri, which ticket he delivered to the person collecting fares for defendant on said train shortly after taking passage on defendant's railroad; that when in the course of transit he had arrived a few miles north of Little Rock, Arkansas, the train auditor of defendant again demanded plaintiff's fare; that the plaintiff explained that the fare had been paid, whereupon defendant's agent, known as the conductor of said train, refused to carry plaintiff unless he again paid fare, and put him off at the station above mentioned in a rude and wanton and malicious manner, and without just cause, and subjected him to humiliation. For all of which plaintiff asked judgment in the sum of five thousand dollars actual damages and five thousand dollars punitive damages. To this petition defendant's answer comprised a general denial and a further defense, that whatever injury to his feelings or expense were suffered by plaintiff on the occasion mentioned "were the direct result of his own misconduct and wrongdoing in failing and refusing to produce and present to defendant's employees in charge of the train on which he was riding a ticket authorizing him to ride beyond Benton, Arkansas, and in failing to pay or tender to said agents or employees of defendant his fare from Benton, Arkansas, to St. Louis," and in re-entering

the train without a ticket or money wherewith to pay his fare after he had disembarked at Benton and again after he had-left it at Little Rock, and insisting on riding farther without presenting a ticket or paying his fare, and in being in an intoxicated condition, and failing to conduct himself in a decorous and lawful manner. The train in question was traveling at the time mentioned from Texarkana, Arkansas, north-wardly, to St. Louis, Missouri. The testimony of the plaintiff, in substance, is that he purchased a ticket to St. Louis in the manner stated in his petition, and was carried thereon in the manner stated in his peti-tion until he was ejected at McAlmont, Arkansas. In referring to what took place at the time of his expul-sion from the train, he said that after the train had passed Little Rock, the auditor again called on him and demanded his ticket, and the following conversa-tion took place: ''I glanced up at him and said, 'You have my ticket. I suppose you have. I have given it up to you or to someone. I think it was you.' He said 'No, I haven't got it.' I said, 'Well, if I have it, or any receipt for it, I will certainly be glad to give it to you, but I know that I have given it up.' He said, ''Well, see if you have got it—I will be back'—no, he didn't tell me he would be back, but he did come back. I knew full well that I did not have the ticket but I thought it possible I had some slip or receipt that they had given me. I looked through my pocketbook for that, and didn't find anything of the kind. He said, 'Well, have you got that ticket?' I said 'I told you once I have given up my ticket. No, I haven't the ticket.' He said, 'Oh, you didn't have any ticket when you got on this train, and you knew you didn't. Now, you will either have to pay your fare or get off.' I answered to that, that I had paid my fare once and refused to pay it again. Then he said, 'Well, you will have to get off. We are going to stop in a few minutes, and

you be ready to get off.' And he passed on out of
the front end of the car.'' He testified further that
he was put off the train within a few miles after this
conversation at the station mentioned, and after wait-
ing a couple of hours rode back at an expense of fif-
teen cents towards Little Rock, but stopped at Ar-
genta, a town on the north side of the river, where he
spent the night, and went over next morning to Little
Rock, where he got the money to pay his way home,
which was about seven dollars; that he was a law sten-
ographer and his time lost by this detention was of
value ten dollars; that at the time he was put off the
train he called the attention of the conductor to that
fact, and the conductor replied, ''I will stand for it,
that the train crew put you off.'' In speaking of what
happened after he entered the train at Texarkana, he
said the ticket collector came through the car and he
surrendered it to him, gave up the whole thing—he
took it all and gave him nothing back.

For the defense there was evidence tending to
show that the plaintiff embarked on its train at Tex-
arkana on the date above stated, and soon thereafter
the train auditor went through the train for the pur-
pose of taking up the tickets of the passengers; that
when he came to the plaintiff he received from him
a ticket reading to Benton, Arkansas, a station some
twenty-five miles south of Little Rock; that in return
for the ticket, the auditor gave the plaintiff a check,
''checked his hat to Benton, Arkansas;'' that before
the train arrived at Benton the auditor went around
and took up the hat check he had given plaintiff, who
got up and came out and went down the steps and got
on the platform; that the auditor holloed ''all aboard;''
that when he got back in the train he discovered that
plaintiff had gotten back on the train, whereupon he
asked him for a ticket; that plaintiff replied, ''I have
no ticket,'' and searched his pockets, and said, ''I can't
find my ticket.'' The auditor said, ''Go ahead and

find your ticket—I will be back after while and get your ticket;" that after a while he came back and said, "Well, Cap, did you get your ticket." Plaintiff answered, "No I can't find my ticket." The auditor said, "Well, you will have to pay forty-eight cents to Little Rock, that is the first stop." Plaintiff replied, "I have no money." The auditor said, "What did you want to get back on the train for if you had no money?" That plaintiff said, "I had a ticket." That the auditor said, "Find a ticket, otherwise you will have to get off at Little Rock." The plaintiff answered, "I have no money or any ticket." That the auditor rejoined, "You will have to get off at Little Rock—Little Rock is our next stop;" that after passing Little Rock, he (the auditor) went through the car again to collect fares; that the first man he met, sitting in the same seat, was the plaintiff, to whom he said, "Fares please," and added, "I thought I told you to get off at Little Rock;" that plaintiff then replied, "I gave you a ticket to St. Louis," and the auditor said, "Brother, you did not give me any ticket to St. Louis. I certainly would have checked you to St. Louis if you had given me a ticket to St. Louis." He said, "I gave you a ticket to St. Louis and I am going to St. Louis." the auditor said, "You will have to get off at the first stop;" that when they reached McAlmont the plaintiff was conducted off the train.

There was other testimony in the record not material to the point presented by this appeal.

The case was submitted to a jury, who returned a verdict in favor of the defendant. Plaintiff filed a motion for a new trial which was subsequently sustained by the court for the assumed error in one of the instructions given by it at defendant's request. The instruction in question is, to-wit:

"The court instructs the jury that, if you believe from the evidence that defendant's train auditor gave plaintiff a check to indicate the destination of his

ticket, when he took it up, and thereafter demanded said check of plaintiff and plaintiff failed or refused to exhibit or surrender said check to him, then defendant's train auditor had the right to eject plaintiff from the train at the time and place he did eject him, if he refused to pay his fare beyond Little Rock, and you will find your verdict for the defendant.''

From the order granting a new trial, defendant perfected an appeal to this court.

## OPINION.

I.  The only question presented by this appeal is as to the propriety of the instruction given by the court on behalf of defendant, for the giving of which a new trial was granted.

Counsel for defendant insisted, and cites authority to that effect (2 Hutchinson on Carriers [3 Ed.], sec. 1037), that a carrier's rule requiring its passengers to show their tickets to conductors when called upon so to do and making it the duty of the conductor to remove from the train any person who refuses to do so, or to pay proper fare, is a reasonable and just measure of protection against the use of one ticket as a passport for more than one person, and that this principle applies equally to the right to call for a substitute for an original ticket in the form of a rebate or train check or other slip given to the passenger when his ticket is taken up.  However, in this State it has been distinctly held that a passenger who fails to purchase a ticket and who does not *tender* a proper fare upon request of the conductor, may be lawfully ejected from the train under the safeguards provided by statute.  [Holt v. Railroad, 174 Mo. 524, adopting opinion of Court of Appeals in the same case, 87 Mo. App. 203.]

The defect in instruction numbered 6 is not that it embodies an incorrect statement of the law in the abstract, but that it submitted to the jury a hypothesis

which not only had no support in the evidence but was positively disproven by the testimony of the witnesses on both sides. One of the theories of this instruction is, that plaintiff might be ejected from the train if he failed to produce at a point on his journey north of Benton, Arkansas, "a check indicating the destination of his ticket," or to pay fare beyond such point. There is not a scintilla of evidence in this record tending to prove that plaintiff was furnished with a "check" showing his right to travel on its train to any point farther north than Benton, Arkansas. On the contrary, the plaintiff testified positively that when his original ticket was taken up, after leaving Texarkana, he received nothing whatever in lieu thereof, and all of defendant's witnesses (the conductor and auditor) who testified on this subject stated that when said ticket was taken up the plaintiff was given only a "hat check" which read to Benton, Arkansas. Plainly, therefore, it was out of the power of the plaintiff, under this undisputed evidence, to produce any form of a ticket after the train had passed the station known as Benton, Arkansas; and the instruction in question submitting that issue to the jury was wholly unsupported by any evidence, was misleading and prejudicial, and should not have been given, and the court did not err in granting a new trial on account of that misdirection.

If the instruction under review had submitted the issue of the refusal of the plaintiff to tender a *ticket* showing a destination north of Benton, Arkansas, or to pay a proper fare thenceforward, it would have presented a defense amply supported by the testimony adduced by defendant, and which the defendant was clearly entitled to have submitted to the jury. According to the tenor of the proof on behalf of defendant, plaintiff's ride was ended when he reached Benton, Arkansas. Hence, it is clear, if plaintiff insisted on being transported beyond that point, he should have

provided himself with a ticket for his further journey, or should have tendered proper fare. The infirmity of the instruction under review is that it was not so expressed. Its error consisted in the inaccurate use of the word "check," instead of some term descriptive of a ticket for passage in original form.

According to the record, new trial was granted in this case solely because of the inaccuracy of the instructiton as applied to the conceded evidence. That will doubtless be corrected on a new trial.

The order of the circuit judge granting a new trial herein is affirmed, and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion by BOND, C., is adopted as the opinion of the court. All the judges concur.